**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDEN HUDGINS,** | : | **Civil Action No.** |
| **5817 Florence Avenue** | : | |
| **Philadelphia, PA 19143** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **RITTENHOUSE CLARIDGE, INC.** | : | |
| **201 S 18th Street** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **And** | : | |
| | : | |
| **KAISERMAN COMPANY, INC.** | : | |
| **201 18th Street, Suite 300** | : | |
| **Philadelphia, PA 19103** | : | |
| **Defendants.** | : | |

## CIVIL ACTION

Plaintiff, Branden Hudgins (hereinafter "Plaintiff"), by and through his attorney, Koller

Law, LLC, bring this civil matter against Rittenhouse Claridge, Inc. (hereinafter "Defendant

Rittenhouse") and Kaiserman Company, Inc. (hereinafter "Defendant Kaiserman" and collectively

as "Defendants"), for violations of Title VII of the Civil Rights Act ("Title VII"), as amended, the

Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance

("PFPO").  In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Rittenhouse Claridge, Inc. is an apartment building with a location and corporate headquarters at 201 S 18th Street, Philadelphia, PA 19103.

4. Upon information and belief, Defendant Kaiserman Company, Inc. is a property management company with a location and corporate headquarters at 201 S 18th Street, Philadelphia, PA 19103.

5. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendants because the Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe

<u>Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted his administrative remedies under Title VII, PHRA and the PFPO.

14. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

15. The Charge was assigned a Charge Number 530-2025-07335 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

16. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated December 2, 2025. Plaintiff received the notice by electronic mail.

17. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

18. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

19. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. Plaintiff is an African American male.

22. In or around September 2016, Defendants hired Plaintiff in the position of Doorman.

23. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF HAD A CONFRONTATION WITH AN AFRICAN AMERICAN RESIDENT, WHO DEFENDANTS ULTIMATELY REMOVED AS A RESIDENT

24. On or about February 10, 2024, a resident, ("PI") (African American), harassed Plaintiff by attempting to provoke a confrontation while recording Plaintiff on his phone.

25. PI was known to have ongoing conflicts with Defendants regarding disability accommodations that he requested, but was not provided.

26. Plaintiff informed Austin Gardener (Caucasian), Human Resources Manager, of PI's harassment which Gardener granted.

27. On or about February 17, 2024, Plaintiff emailed Chris DeMarco (Caucasian), Property Manager, that PI had previously filed a police report on or about January 5, 2024, falsely claiming that Plaintiff had threatened him.

28. However, Defendants were aware of the police report, but had not notified Plaintiff of it.

29. In or around the fall of 2024, DeMarco informed Plaintiff that PI was no longer a resident and implied it was a favor to Plaintiff.

**DEFENDANTS REFUSED TO PROPERLY ADDRESS A CAUCASIAN RESIDENT DISCRIMINATING AGAINST PLAINTIFF AND OTHER STAFF AND RESIDENTS**

30. On or about August 29, 2024, a resident, ("TM") (Caucasian), harassed Plaintiff after he left his post for a scheduled break.

31. TM yelled at Plaintiff to "do his job" and to "know his place", or words to that effect, in an aggressive and demeaning tone.

32. Previously, Plaintiff reported TM telling an Asian resident to "go back to where you come from," or words to that effect.

33. However, despite this and multiple other complaints from staff and residents regarding TM's discriminatory conduct, Defendants took no action and repeatedly renewed TM's lease.

**A CAUCASIAN RESIDENT RECORDED A CONVERSATION WITH PLAINTIFF AND SENT THE VIDEO TO MANAGEMENT**

34. On or about December 24, 2024, a resident, ("RF") (Caucasian), recorded Plaintiff during a conversation in which she asked about maintenance issues.

35. Plaintiff handled the situation as professionally as possible.

36. RF proceeded to send the video of her conversation with Plaintiff to DeMarco.

**DEMARCO ISSUED PLAINTIFF AN UNWARRANTED WRITE UP FOR HIS CONVERSATION WITH RF**

37. On or about January 23, 2025, DeMarco issued Plaintiff an unwarranted written discipline for his conversation with RF.

38. Plaintiff explained the situation and how RF had approached him, but DeMarco upheld the written discipline.

**DEMARCO REQUESTED PLAINTIFF TO SIGN A WRITTEN APOLOGY LETTER**
**WHICH WAS NOT A REQUIREMENT FOR ANY OTHER DOORMEN**

39. In addition, DeMarco asked Plaintiff to sign a written apology letter to RF.

40. No other Doormen had ever been required to sign an apology letter under similar circumstances.

41. Importantly, Plaintiff was the only African American Doorman at Defendants at this time.

42. Due to this, Plaintiff refused to sign the apology letter to RF.

**DEMARCO BEGAN TO RETALIATE AGAINST PLAINTIFF**

43. DeMarco then began to subject Plaintiff to heightened scrutiny and petty criticism, while overlooking similar or worse conduct by his non-African American peers.

44. In March 2025, Plaintiff went out on vacation.

45. During this time, Defendants changed the vacation request policy and procedures to requiring employees notifying management verbally of vacation requests and not just submitting the time through ADP.

46. However, Defendants did not inform Plaintiff of the updated process.

47. DeMarco proceeded to then reprimand and threaten Plaintiff with discipline for not following the updated vacation request policy.

**GARDENER PLACED PLAINTIFF ON SUSPENSION**

48. On or about April 22, 2025, Gardener called Plaintiff and informed him that he was being placed on suspension pending investigation into alleged time theft.

49. Specifically, the investigation was into Plaintiff taking a single one (1) hour break during his shifts, instead of a 30-minute break and two (2) 15-minute breaks.

50. Plaintiff had been taking a single one (1) hour break throughout his employment with Defendants without any issue.

## DEFENDANT TERMINATED PLAINTIFF

51. On or about April 24, 2025, Gardener called Plaintiff and terminated him for alleged misrepresentation of timekeeping and other performance issues.

52. Importantly, non-African American Doormen took one (1) hour breaks before and after Plaintiff's termination without issue.

53. Previously, in or around late 2023, Defendants terminated the one other African American Doorman, accusing him of theft.

54. Defendants discriminated against Plaintiff due to his race and retaliated against him for his complaints of race discrimination in violation of Title VII, the PHRA and the PFPO.

55. Defendants' acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

56. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

57. Plaintiff is a member of protected classes in that he is African American.

58. Plaintiff was qualified to perform the job for which he was hired.

59. Plaintiff suffered adverse job actions, including, but not limited to termination.

60. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

61. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

62. Defendants discriminated against Plaintiff on the basis of race.

63. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

64. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his race (African American).

67. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RACE DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his race (African American).

70. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. Plaintiff engaged in protected activity protected by Title VII when he complained about race discrimination.

73. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

74. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

75. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

76. Plaintiff engaged in activity protected by the PHRA when he complained about race discrimination.

77. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

78. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## <u>PHILADELPHIA FAIR PRACTICES ORDINANCE</u>

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. Plaintiff engaged in activity protected by the PFPO when he complained about race discrimination.

81. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

82. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Branden Hudgins, requests that the Court grant him the following relief against Defendants:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII, the PHRA and the PFPO.

(j)    Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: March 2, 2026          **By:**     ***/s/ David M. Koller***
                                           David M. Koller, Esquire
                                           Jordan D. Santo, Esquire
                                           2043 Locust Street, Suite 1B
                                           Philadelphia, PA 19103
                                           215-545-8917
                                           davidk@kollerlawfirm.com
                                           jordans@kollerlawfirm.com

                                           *Counsel for Plaintiff*